**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **EDWARD P. ZIMMER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:10-cv-1117-WTL-TAB** |
| | ) | |
| **CARMEL CLAY SCHOOLS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ENTRY ON PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court is the Defendants' Partial Motion for Judgment on the Pleadings

(Docket No. 10). The motion is fully briefed, and the Court, being duly advised, now **GRANTS**

the motion for the reasons set forth below.

## I. RULE 12(c) STANDARD

In reviewing a motion for judgment on the pleadings, the Court must apply the same

standard that applies to a motion to dismiss under Rule 12(b)(6), and therefore must take the

facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs.

The complaint must contain only "a short and plain statement of the claim showing that the

pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and there is no need for detailed factual

allegations. However, the statement must "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th

Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. BACKGROUND

On November 5, 2008, then thirteen-year-old R.Z. got off of her regular school bus visibly upset. When her mother, Plaintiff Sherri Zimmer ("Sherri") asked R.Z. what was wrong, she said that a male student had asked her why she didn't vote for Obama. R.Z. replied that she disagreed with Obama's positions on abortion and gay marriage as they were against her religion. In response the male student said "F— you."

The next day, the same male student approached bus driver Betty Campbell. The student told Campbell that R.Z. had stated that his brother was going to hell because he was gay.

On November 7, Campbell arrived at Clay Middle School with a bus full of students. Before allowing the students to leave, Campbell turned on her flashing lights to signal to the students that she was going to make an announcement. R.Z. turned off her iPod but she left her earbuds in her ears. In her announcement, Campbell stated that if the students wanted to be "churchy" then they needed to attend a parochial school. R.Z. also heard Campbell speaking about homosexuality and civil unions.

That afternoon, Campbell asked an African American student if R.Z. had ever said anything "negative" to him because of his race. After the student repeatedly said he didn't know, Campbell stated that he was "a smart guy" and R.Z. was "a stupid little bigot" who "had no right to say the things she said." Campbell then engaged in a discussion with another female student during which Campbell stated that R.Z. had not paid attention during the morning announcement. Campbell told the student that she was going to go to R.Z.'s house and speak with her mother.

True to her word, that afternoon, Campbell arrived at the Zimmer house and beckoned to R.Z. and her sister S.Z. The girls followed Campbell onto her bus where she began to lecture

2

them about bigotry.  Campbell stated that R.Z. could be as "churchy" as she wanted but she could not tell someone that his brother was going to hell.  R.Z. denied making any such statement.  Campbell again stressed that R.Z. could not "throw religion in people's faces" as she attended a public school.  Campbell also talked to R.Z. and S.Z. about homosexuality and gay marriage and stated that she agreed with the concept of civil unions.

At this point, Sherri, who had learned that her daughters were on the bus with Campbell, arrived.  She found R.Z. in tears.  Campbell told Sherri that R.Z. had stated that another student's brother was going to hell because he was gay.  R.Z. denied making that comment.  At this point, Sherri intervened and asked Campbell why she had come to the Zimmer house after school hours to lecture R.Z. about homosexuality.  Sherri told Campbell that she should instead be talking to the student who said "F— you" to R.Z.  Ultimately, Sherri told R.Z. and S.Z. to get off the bus because they were not going to resolve anything with Campbell.

Sherri immediately called Clay Middle School and left a message for Vice Principal Glander.  She expressed anger about Campbell's treatment of R.Z. and asked Glander to return her call.  Sherri also called Amy Blevins at Carmel Bus Transportation and expressed her outrage.  Blevins stated that she would review the recordings from Campbell's bus but could not do anything until that occurred.

On November 11, Ed Zimmer ("Ed") spoke with the Director of Bus Transportation, Ron Farrand.  Ed asked Farrand when they were going to meet to discuss the Campbell situation. Farrand replied that he did not think a meeting was necessary as he had reviewed the tape and he did not think that Campbell did anything wrong.  Ed requested to see the recordings from Campbell's bus and Farrand said "no."  When Farrand said that he did not intend to terminate

Campbell, Ed stated that he would be requesting access to the bus recordings via legal channels.

On November 12, R.Z. left a message on her parents' answering machine informing them that Campbell had asked all of the eighth grade girls to get off of the bus for a discussion that morning. Apparently Campbell told them she would allow the girls to vote on a radio station to be played on the bus in the morning. She also told the girls that some of them may be asked to speak with the Principal about the R.Z. situation. Campbell then stated that Sherri was "out to get her."

Sherri and Ed, on behalf of themselves and their minor daughter R.Z., filed this suit in Hamilton County Superior Court asserting that the Defendants violated their First Amendment rights, as well as committed negligence, intentional infliction of emotional distress, and negligently trained, supervised, or retained Campbell. The Defendants properly removed the case to this Court and have now moved for partial judgment on the pleadings.

### III.  DISCUSSION

In their partial motion for judgment on the pleadings, the Defendants argue that the Plaintiffs' tort claim notice is deficient as to R.Z. because it does not identify her as a claimant and therefore R.Z.'s tort claims against them should be dismissed. Although R.Z. is mentioned as a "person affiliated with the claimants with knowledge of the facts" and she plays a significant role in the "general background and facts" section, she is never identified as a claimant. *See* Docket No. 11 Ex. 1. Indeed, the only people identified as "the person/institution making the claim" are Ed and Sherri. Nowhere does the tort claim notice state that R.Z. is bringing her own claims against the Defendants.

In response, the Plaintiffs assert that their tort claim notice complies with the Indiana

Tort Claims Act ("ITCA"). The ITCA "establish[es] procedures for cases involving the prosecution of tort claims against governmental entities." *State v. Willits*, 773 N.E.2d 808, 814 (Ind. 2002). With certain exceptions not relevant here, "a claim against a political subdivision is barred unless notice is filed . . . within one hundred eighty (180) days after the loss occurs." IND. CODE 34-13-3-8. The one hundred eighty day notice requirement applies "not only to suits against political subdivisions but also to suits against employees of political subdivisions." *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999). The tort claim notice

> must describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

IND. CODE 34-13-3-10.

According to the Plaintiffs, their notice meets the statutory requirements because it "is eight pages long," "goes into very specific detail about the incidents giving rise to the Complaint," identifies R.Z. and "describes numerous events that happened to her that resulted in the claim," Docket No. 12 at 2, and states that the Defendants' actions deprived Sherri and Ed "and their Daughters' Constitutional and statutory rights." Docket No. 11 Ex. 1 at 6. However, the Plaintiffs gloss over the fact that R.Z. is not listed as a claimant. Only Sherri and Ed are. Moreover, the only case that the Plaintiffs cite in support of their position is *Collier v. Prater*, 544 N.E.2d 497 (Ind. 1989). However, in *Collier*, unlike in the instant case, the claimant was identified in the tort claim notice. Here, R.Z. is simply not identified as a claimant and her residence is not listed in the notice. Accordingly, the Plaintiffs' argument that their tort claim notice satisfies the ITCA's requirements with respect to R.Z. is not persuasive.

The Plaintiffs' alternative argument, that their tort claim notice substantially complies with the ITCA, is no more convincing. Although failure to file a timely tort claims notice does not necessarily bar a plaintiff's suit, substantial compliance with the ITCA is required. *Irwin Mortg. Corp. v. Marion Cnty. Treasurer*, 816 N.E.2d 439, 446 (Ind. Ct. App. 2004). What constitutes substantial compliance is a question of law. *Collier*, 544 N.E.2d at 499. "In general a notice that is filed within the 180 day period, informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonably affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it." *Id.* "The crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense." *Id.* at 500.

Indiana courts have concluded that notice mailed to a city's legal department instead of to the mayor, as statutorily required, is sufficient. *See Galbreath v. City of Indianapolis*, 255 N.E.2d 225 (Ind. 1970). Similarly, a plaintiff's failure to file a notice with the office of the attorney general did not bar a claim where the governmental entity being sued sent a copy of the notice to the attorney general. *See Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468 (Ind. 1988). However, when a plaintiff failed to file any notice of an intent to make a claim, actual knowledge of the occurrence, even when coupled with an investigation was not sufficient. *See Geyer v. City of Logansport*, 370 N.E.2d 333 (Ind. 1977). Nor is "knowledge of a claimant's injury, and even an opportunity to investigate," sufficient to satisfy the requirements of the ITCA when no tort claim notice was filed. *Brown v. Alexander*, 876 N.E.2d 376, 384 (Ind. Ct. App.

6

2007).  Finally, "a claimant may not rely upon the notice given by another party, but must serve the governmental entity with his own notice of a tort claim in order to preserve his cause of action."  *Dameron v. City of Scottsburg, Ind.*, 36 F.Supp.2d 821, 837 (S.D. Ind. 1998).

In the instant case, the Plaintiffs' tort claim notice does not substantially comply with the ITCA with respect to R.Z.  R.Z. is not listed as a claimant.  Even though R.Z. is listed as a "person affiliated with the claimants with knowledge of the facts" and the Plaintiffs allege that their daughters' constitutional and statutory rights were violated, this is not enough.  The Plaintiffs' choice to omit R.Z. from the tort claim notice could have been based on their desire to shield their minor child from the glare of litigation.  Moreover, by failing to give the Defendants notice of R.Z.'s claims, the Plaintiffs denied the Defendants an opportunity to investigate and resolve her claims prior to litigation.  Therefore, because R.Z. has not substantially complied with the ITCA's notice requirement, her tort claims against the Defendants are barred.

## CONCLUSION

For the foregoing reasons the Defendants' Partial Motion for Judgment on the Pleadings (Docket No. 10) is **GRANTED**.

SO ORDERED:  01/14/2011

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Rosemary L. Borek
Stephenson Morow & Semler
rborek@stephlaw.com

James S. Stephenson
Stephenson Morow & Semler
jstephenson@stephlaw.com

Michael A. Wilkins
Broyles Kight & Ricafort, P.C.
mwilkins@bkrlaw.com